UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

CIVIL ACTION NO._____

| | |
|---|---|
| DONNA VANHORN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>REPUBLIC SERVICES OF )<br>NORTH CAROLINA, LLC )<br>)<br>Defendant. )<br>)<br>_____) | COMPLAINT FOR AGE DISCRIMINATION,<br>DISABILITY DISCRIMINATION<br>AND WRONGFUL DISCHARGE |

**NOW COMES** Plaintiff, complaining of Defendant and alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought to remedy employment on the basis of age and disability against Plaintiff. Plaintiff's Complaint is brought under The Age Discrimination in Employment Act of 1967 ("ADA") 29 U.S.C. § 621, *et. seq.*, as amended, which incorporates by reference § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) and The Americans with Disabilities Act of 1990 ("ADA"). 42 U.S.C. § 12112 and § 12117, as amended, ADA Amendments Act of 2008. Additionally, Plaintiff asserts a claim for wrongful discharge under North Carolina law.

2. Plaintiff seeks monetary relief, compensatory damages, and punitive damages pursuant to 42 U.S.C. § 2000e(g), 42 U.S.C. § 1981A(b) and North Carolina law.

3. On August 17, 2018, the EEOC issued and mailed to Plaintiff the Notice of Right to Sue for EEOC Charge No. 430-2017-01073. (Attached as Exhibit 1)

1

4. Plaintiff timely filed a Charge of Discrimination Charge No. 430-2017-01073 with the EEOC. (Attached as Exhibit 2)

5. Plaintiff has exhausted her administrative remedies.

6. Plaintiff is a citizen and resident of Catawba County, North Carolina.

7. At all times relevant to this Complaint, Plaintiff worked for Defendant.

8. The unlawful employment practices complained of herein occurred within Catawba County, North Carolina.

9. The jurisdiction of this court is invoked pursuant to 42 U.S.C. § 2000e, 38 U.S.C. § 4323(b)(3), 29 U.S.C. § 626(c), 28 U.S.C. § 1367, and 28 U.S.C. § 1343(4).

10. This court should assume supplemental jurisdiction of Plaintiff's state law claims for wrongful discharge under 28 U.S.C. § 1367(a) because these claims are based upon the same operative facts as the discrimination claims over which the court has jurisdiction, and judicial economy, convenience, and fairness to the parties demand that the court assume and exercise jurisdiction over all claims alleged herein.

11. The venue of this court over this controversy is based upon the following:
    a. The unlawful employment practices alleged herein were committed in the Western District of North Carolina. Accordingly, venue lies in the United States District Court for the Western District of North Carolina under 28 U.S.C. § 1391(b); and,
    b. Plaintiff avers that Defendant is a corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

## PARTIES

12. Plaintiff was employed by Defendant on or about September 20, 1993 as a Staff Accountant and promoted in 1997 to Business Unit Controller.

13. Plaintiff was born on March 30, 1960 and is presently 58 years of age.

14. Defendant Employer is a North Carolina corporation licensed to do and doing business in the State of North Carolina and doing business as Republic Services of North Carolina, LLC.

15. At all times relevant to this Complaint, Defendant employed 500 or more employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year.

16. Defendant is engaged in an industry affecting commerce and is an employer within the meaning of § 11(b) of ADEA, 29 U.S.C. § 630(b) ADA and 29 U.S.C. 57611 (4)(A).

17. At all times relevant to this Complaint, the following persons were employed by Defendant and acted within the course and scope of their employment and as agents of Defendant for all of the acts alleged herein:

    A. Don Phelps (hereinafter "Phelps"), General Manager

    B. Julia Page (hereinafter "Page"), Assistant Controller

    C. Andria Deane ("hereinafter "Deane"), Business Unit Controller

    D. Paulette Moerdky-Catlin (hereinafter "Catlin"), Staff Accountant

    E. Erica Leonhardt (hereinafter "Leonhardt"), Human Resources

    F. Clara Burk (herein after "Burk"), Area Finance Manager

    G. Dottie Hudson (hereinafter "Hudson"), Office Manager

    H. Dwana Compton (hereinafter "Compton"), Human Resources Manager

    I. Trevor Baumann (hereinafter "Baumann"), Area Human Resources Manager

## STATEMENT OF FACTS

18. Plaintiff is a 58 year old resident of Catawba County, North Carolina.

19. Plaintiff was born in North Carolina in Cleveland County.

20. Plaintiff grew up in Burke County, North Carolina and graduated from Lenoir Rhyne College, North Carolina in 1992 with a B.A. in Accounting.

21. Plaintiff began working with Defendant in Hickory, North Carolina in September 1993 as a Staff Accountant in the waste disposal business.

22. During Plaintiff's twenty three (23) years of employment with the Defendant, the Plaintiff held the positions of Staff Accountant and in 1997 Plaintiff was promoted to Business Unit Controller.

23. Plaintiff's performance was always good and she received good performance evaluations in excess of twenty three (23) years.

24. During her employment with Defendant, Plaintiff received numerous raises and bonuses due to her good performance evaluations.

25. Plaintiff was on FMLA on or about November 19, 2014 when Plaintiff required brain surgery.

26. Leonhardt, Human Resources Manager, for Defendant, called Plaintiff numerous times to return to work prior to February 19, 2015 stating that Plaintiff would lose her job if she did not return to work.

27. Plaintiff returned to work on or about February 19, 2015.

28. Plaintiff was still in therapy for Bell's Palsy and the dizziness that accompanies Bell's Palsy when she returned to work.

29. As a result of the brain surgery, Plaintiff was left totally deaf in her left ear and has facial paralysis on the left side of her face which affects complete closure of her left eye, normal facial expression and some control of facial movement.

30. On or about April 10, 2015, Page, Assistant Controller for Defendant interviewed for a Business Unit Controller position in Louisiana.

31. On or about May 1, 2015, Plaintiff was demoted from Business Unit Controller to Assistant Controller.

32. Defendant continued to pay Plaintiff the same base salary of $75,000.

33. Phelps, General Manager for Defendant, stated to Plaintiff, "you do not fit the profile of a controller any more. The controller role is changing."

34. In a meeting with Baumann, Area Human Resources Manager for Defendant, Phelps stated to Plaintiff, he wanted Plaintiff to finish out her career at Defendant's employment and did not want her to leave.

35. On or about May 22, 2015 Page was transferred to Defendant's Louisiana division as a Business Unit Controller.

36. On or about July 13, 2015 Deane, Business Unit Controller for Defendant, was transferred to Defendant's Hickory office as the Business Unit Controller with a salary of $95,000.00.

37. Deane had previously worked in the Huntsville, Alabama office where she had been an Assistant Controller for approximately nine (9) months.

38. Plaintiff trained and taught Deane everything while Deane was Plaintiff's new "boss".

39. On or about December 7, 2015 all three parts of Defendant's audit in Hickory, N.C. failed. All audits had passed under Plaintiff's leadership for twenty-two (22) years.

40. On or about January 26, 2016 Deane was instructed by Phelps to inform Plaintiff that Plaintiff would no longer be attending the Monday morning staff meetings.

5

41. On or about February 2, 2016 Deane gave Plaintiff a good review and a 1.25% raise in pay.
42. On or about February 12, 2016 Plaintiff received her 2015 bonus of $12,779.17.
43. On or about May 23, 2016 Phelps was suspended by Defendant for one week without pay because of the failed audit.
44. On or about June 22 through June 26, 2016 a pre-audit was performed by Nancy Caldwell, Region Finance Manager, Felecia Rosemond, Region Assistant Finance Manager, Michael Summers, Business Unit Controller from Troy, NC and Vanessa Casteen, Business Unit Controller from Raleigh, NC.
45. On or about July 2016 Plaintiff requested and approved from Deane a 3 day leave for November 8 through 11, 2016 to have eye surgery.
46. On or about August 12, 2016 Burk, Area Finance Manager for Defendant, asked Phelps for full reign of Phelps office, hiring and firing, and Burk was to review for audit.
47. On or about August 19, 2016 Deane requested Plaintiff to come to the conference room at 4:45 pm where Burk was present and Phelps was not present.
48. Plaintiff was handed a performance improvement plan, informed she was being placed on a PIP for 60 days and if Plaintiff's performance did not improve it could result in her termination.
49. Plaintiff was informed she needed to demonstrate immediate improvement in her performance.
50. The "improvement plan" write up contained miscellaneous issues taken out of context and Plaintiff began to write a response before signing it.
51. Plaintiff was pressured to stop writing and to sign the paper by Deane and Burk.

52. Plaintiff was not allowed to finish writing a response and told again to sign the document.

53. Deane and Plaintiff had four (4) meetings during the 60 day period and Plaintiff was required to email Deane back their discussion topics.

54. Plaintiff had never been presented an "improvement plan" write up for anything in her twenty-three (23) year career with Defendant.

55. On or about October 19, 2016 Plaintiff was called into the conference room at about 4:55 pm by Deane where Burk was present, Phelps was not present and Compton, Human Resources Manager for Defendant was conferenced in on the television.

56. Deane informed Plaintiff that Defendant had decided Plaintiff's employment with Defendant would end today October 19, 2016, and that Plaintiff would receive no unused vacation pay and no severance pay.

57. Plaintiff kept asking "why" but Deane would not look at Plaintiff.

58. Compton finally responded to Plaintiff that it was time to "part ways".

59. Plaintiff was asked to turn over her company phone and keys immediately, her computer was turned off and Deane monitored Plaintiff while she packed her personal belongings.

60. After Plaintiff packed several boxes, Deane walked Plaintiff to the door and locked it behind her.

61. The Defendant's stated reason for the Plaintiff's termination, that the Plaintiff allegedly had performance issues and Defendant's use of a "performance plan' write up, after the Plaintiff had absolutely no performance issues for twenty three (23) years is a ploy used by the Defendant to terminate the Plaintiff's employment because of Plaintiff's age (56 at the time of termination) and because of Plaintiff's disabilities.

7

62. At the Plaintiff's termination meeting, the Defendant did not provide a reason for terminating Plaintiff's employment and Compton stated they had decided it was time to "part ways".

63. Upon information and belief, the Defendant has a progress disciplinary policy which was not adhered to with regard to Plaintiff's employment termination.

64. Plaintiff suffers from medical conditions which cause substantial limitations upon her major life activity of hearing, speaking, seeing and eating within the meaning of the ADA.

65. As a result of Plaintiff's Bell's palsy and deafness in her left ear, Plaintiff has substantial limitations upon the major life activity of hearing, speaking, seeing and eating within the meaning of the ADA.

66. Plaintiff has a history of having a physical impairment which substantially limits her major life activity of hearing, speaking, seeing and eating.

67. Plaintiff is regarded by others and regarded by the Defendant as having a physical impairment or perceived physical impairment that substantially limits the major life activity of hearing, speaking, seeing and eating.

68. Despite her disabilities, Plaintiff is able to perform all of the essential functions of her job with reasonable accommodations.

69. Plaintiff is a "qualified individual with a disability" within the meaning of § 101(a) of the American with Disabilities Act, 42 U.S.C. § 12111(a) because of substantial limitations on her major life activities of hearing, speaking, seeing and eating caused by no hearing in Plaintiff's left ear and Bell's Palsy.

70. Plaintiff was "regarded as" having a disability by her employer within the meaning of the ADA.
71. Plaintiff's employment was wrongfully terminated and she was discriminated against based upon her age and disability.
72. While employed with the Defendant, the Plaintiff's job performance had always met or exceeded the Defendant's employment standards and the Plaintiff was adequately performing and meeting all job performance standards of the Defendant.
73. On October 19, 2016, Defendant terminated Plaintiff's employment and Defendant did not provide a reason for terminating Plaintiff's employment.
74. Defendant's assertions that it was proper to terminate the Plaintiff's employment because Defendant allegedly issued Plaintiff a performance plan "write up" two months before her termination or that Plaintiff somehow failed an alleged 60 day PIP is a ploy used by the Defendant to terminate the Plaintiff's employment because of Plaintiff's age and disability in violation of federal law.
75. Defendant terminated the Plaintiff's employment because of her disability in violation of federal law.
76. The Plaintiff's employment replacement after Plaintiff's termination was Chong Cha, who is substantially younger than the Plaintiff and not disabled.
77. Plaintiff's previous job duties and function are performed by substantially younger employees of Defendant who are not disabled.
78. As a result of being terminated from a job that Plaintiff held for over 23 years, Plaintiff has lost her income, her benefits, and her peace of mind.

79. As a result of the actions of Defendant described herein the Plaintiff is entitled to damages in an amount greater than $10,000.00.

## AGE DISCRIMINATION

80. Plaintiff incorporates by reference the allegations of paragraphs 1 through 79 as though set forth fully herein.

81. Defendant terminated Plaintiff because of her age (56 years old at the time of termination).

82. Defendant committed unlawful and discriminatory practices in violation of the provisions of the ADEA, as amended, 29 U.S.C. § 621, *et seq.*

83. Plaintiff is entitled to reinstatement to her job, back pay, interest on back pay, front pay, and employment benefits, including but not limited to vacation pay, sick pay, health insurance benefits, and life insurance benefits.

84. Plaintiff's losses are in an amount greater than $10,000.00.

## DISABILTY

85. Plaintiff incorporates by reference herein, the allegations set forth in paragraphs 1 through 84 of the Complaint.

86. Defendant unlawfully and intentionally discriminated against Plaintiff by terminating her because of her status as a qualified individual with a disability, her history of disability, or being regarded as having a disability is in violation of the provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 § 12117, as amended. Plaintiff is entitled to recover her lost employment benefits as set forth in § 706(g) of the Civil Rights Act of 1964, which has been incorporated by reference into the ADA.

87. The Plaintiff is entitled to reinstatement of her job, back pay, interest on back pay, front pay, employment benefits including but not limited to, vacation pay, sick pay, health insurance benefits, and life insurance benefits. Plaintiff's losses are in an amount greater than $10,000.00.

88. The Defendant's conduct as described above was willful, malicious, oppressive, wanton, and recklessly indifference to the federally protective rights of the Plaintiff, herein justifying an award of punitive damages in accordance with the provisions of § 1977A of the Civil Rights Act of 1991, 42 U.S.C. § 1981A in an amount greater than $10,000.00.

89. Defendant's conduct, as described above, was willful. Accordingly, Plaintiff is entitled to recover damages under 20 U.S.C. § 621 *et. seq.*, including liquidated damages in an amount equal to the damages specified above.

90. Plaintiff is further entitled to recover reasonable attorney's fees and the costs and expenses of this action.

## WRONGFUL DISCHARGE

91. Plaintiff incorporates by reference the allegations of paragraphs 1 through 90 in support of this claim for relief.

92. The termination of Plaintiff from her position was in violation of the public policy of the State of North Carolina, specifically, the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et. seq.*, which makes discrimination on account of age and handicap or a perceived handicap an unlawful employment practice in North Carolina.

93. Plaintiff is entitled to reinstatement to her job, back pay, interest on her back pay, front pay, and employment benefits, including but not limited to vacation pay, sick pay, health insurance benefits, life insurance benefits, and damages for emotional distress.

11

94. Plaintiff's losses are in an amount greater than $10,000.

95. Defendant's conduct as described herein was willful, malicious, oppressive, wanton, and recklessly in disregard of Plaintiff's rights, so as to entitle Plaintiff to punitive damages under North Carolina law in an amount greater than $10,000.00.

96. Defendant's managers were aware of, condoned, and participated in the illegal discharge of Plaintiff so as to make Defendant liable for punitive damages.

97. Plaintiff is also entitled to recover the cost and expenses of this action and such interest as may be allowed by law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands a trial by jury of all issues so triable and respectfully prays for judgment against Defendant as follows:

1. A declaration that the practices and acts complained of herein are in violation of ADA, the ADEA and North Carolina law.

2. An Order enjoining Defendant from engaging in discrimination on the basis of age and disability.

3. For a money judgment against Defendant for violation of the ADA and ADEA in an amount greater than $10,000.00.

4. For liquidated damages judgment against Defendant for willful violation of the ADA and ADEA in an amount exceeding $10,000.00 and equal to the amount awarded for lost employment benefits.

5. For a money judgment against Defendant for the violation of the ADA and ADEA representing all lost benefits of employment and compensatory damages, including but not limited to loss of wages, loss of benefits, loss of status, loss of reputation,

emotional distress and inconvenience, for an amount in excess of $10,000.00 which amount shall be determined specifically at the trial of this action.

6. For a money judgment against Defendant representing punitive damages under the ADA and ADEA for an amount exceeding $10,000.00 which amount shall be determined specifically at a trial of this action.

7. For a money judgment against Defendant for wrongful discharge in violation of the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et. seq.*, representing all lost benefits of employment and compensatory damages, including but not limited to lost wages, lost employment benefits, loss of status, loss of reputation, and inconvenience, for an amount in excess of $10,000.00, which amount shall be determined specifically at a trial of this action.

8. For a money judgment against Defendant for punitive damages for wrongful discharge because of malicious, willful, and wanton violation of the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et. seq.*, for an amount exceeding $10,000.00, which amount shall be determined specifically at a trial of this action.

9. For a money judgment representing pre-judgment interest.

10. For the costs of suit, including an award of reasonable attorney's fees pursuant to federal law.

11. For such other and further relief as may be just, proper, and necessary to afford complete relief to Plaintiff and to provide Plaintiff that to which she is entitled at the time this action is tried.

This is the 5th day of November, 2018.

                                              s/ Todd J. Combs
                                              Todd J. Combs
                                              N.C. Bar No. 23381
                                              Combs Law, PLLC
                                              1965 Mecklenburg Hwy
                                              Mooresville, NC 28115
                                              Tel: 704-799-2662 Fax: 888-254-0111
                                              Email: todd@combslaw.org

NORTH CAROLINA

Iredell COUNTY

Dana E Vanhorn, BEING FIRST DULY SWORN, DEPOSES AND SAYS:

That she is the Plaintiff in the foregoing action; that she has read the foregoing Complaint

and knows the contents thereof, that the matters and things stated therein are true to the best of her knowledge, save and except those matters and things stated upon information and belief, and as to those, she believes them to be true.

This the 5 day of November, 2018.

_____
Donna E. Vanhorn
AFFIANT

SWORN TO AND SUBSCRIBED before me

this the 5 day of November, 20 18

_____ (SEAL)
Jodi Zanolini
Official Signature of Notary Public

Jodi Zanolini
Printed or Typed Name of Notary Public

My Commission Expires: February 23, 2019

JODI ZANOLINI
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
2/23/19